# EXHIBIT  B

STATE OF MICHIGAN
IN THE WAYNE COUNTY CIRCUIT COURT


Robert Shumake,

     Plaintiff,

-vs-

Chase Manhattan Mortgage Corporation,
A Foreign Profit Corporation,
Washington Mutual Home Loans, A Foreign Profit Corporation,
Ameriquest Mortgage Company, d/b/a Long Beach Mortgage,
A Foreign Profit Corporation, and
CBB, Inc., dba Bretlin Home Mortgage,
Jointly and severally,


     Defendants.
_____/

Horace D. Cotton (P33268)
Attorney for Plaintiff
615 Griswold, Suite 1805
Detroit, MI 48226
(313) 965-7079
_____/

SHUMAKE, ROBERT v CHASE MANHATTAN
Hon. Kathleen Macdonald        10/28/2009

09-026541-CH

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF TO QUIET TITLE AND FOR OTHER RELIEF

Plaintiff Robert Shumake, by and through his attorney, Horace D. Cotton states the

following for his complaint against the defendant:

## PRELIMINARY STATEMENT

This Complaint is filed and these proceedings are instituted under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), seeking to recover actual damages, treble damages, and court costs, by reason of both Defendants' violations of RESPA and Regulation X, 24 C.F.R. § 3500.1 et seq. ("Regulation X"). This Complaint is also brought to raise additional claims against Defendant Bretlin Mortgage Company, ("Bretlin") for breach of fiduciary duty and fraud, and against Long Beach Mortgage Company, Inc. ("Long Beach") for interference with contractual relationship, for money had and received, and for fraud. This Complaint seeks actual damages and punitive damages for those claims as well. Defendant Long

1

Beach knowingly, willfully, and intentionally offered and made illicit payment to Defendant Bretlin, knowing Bretlin had been engaged by Plaintiff to act as his agent in procuring a loan for him, and that Bretlin was bound by statutory, contractual and fiduciary duties to the Plaintiff. Defendant Long Beach offered and made these illicit payments to Bretlin to influence it to abandon its statutory, contractual and fiduciary duties to the Plaintiff and to serve Defendant Long Beach's interests instead, by steering Plaintiff to Long Beach for a mortgage loan.

## PARTIES AND JURISDICTION

1.     Plaintiff is an individual residing in Oakland County, Michigan.

2.     Defendant Chase Manhattan Mortgage Company, is a foreign profit corporation that conducts business in Wayne County, Michigan.

3.     Defendant Washington Mutual Home Loans is a foreign profit corporation that conducts business in Wayne County, Michigan.

4.     Defendant Ameriquest Mortgage Company d/b/a, Long Beach Mortgage is a foreign profit corporation that conducts business in Wayne County, Michigan.

5.     Defendant CBB, Inc., d/b/a Bretlin Home Mortgage ("Bretlin") is a domestic profit corporation that conducts business in Wayne County, Michigan.

6.     This complaint involves title to real property (the "Property") commonly known as 9759 Brownie Brooke Lane , Charlevoix, Michigan 49720, legally described as:

Units 77 and 78, Charlevoix Country Club Condominium, according to the Master Deed as recorded in Liber 335, Pages 47 through 104, Charlevoix County Records, as Amended by First Amendment to Master Deed recorded in Liber 339, Pages 290 through 297, and Second Amendment to Master Deed recorded in Liber 347, Pages158 through 174, and Third Amendment to Master Deed recorded in Liber 356, Page 540, K Charlevoix County Records, and Designated as Charlevoix County Subdivision Plan No. 62, Together with Rights in General Common Elements and Limited Common Elements

as Set Forth in the Master Deed and as Described in Act 59 of the Public Acts of 1978, as Amended.

7. Jurisdiction in this Court is proper pursuant to MCL 600.2932 and MCL 600.605.

8. Venue is proper in this Court pursuant to MCL 600.1605 and MCL 600.1621.

## STATUTORY FRAMEWORK OF RESPA

9. The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA") was enacted on December 22, 1974.

10. Congress noted that "significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a).

11. One purpose of RESPA is "to effect certain changes in the settlement process for residential real estate that will result ... in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b).

12. RESPA applies to "federally related mortgage loans," which is defined at 12 U.S.C. § 2602(1). RESPA initially applied only to certain first liens on residential real property. On October 28, 1992, the law was amended to cover subordinate liens and loans used to prepay or pay off an existing loan secured by the same property. 12 U.S.C. § 2602(1); 24 C.F.R. § 3500.2.

13. RESPA prohibits kickbacks and referral fees: "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a).

3

14.   RESPA prohibits unearned fees:  "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."  12 U.S.C. § 2607(b).

15.   RESPA requires that the lender provide to the borrower a settlement statement which shall "conspicuously and clearly itemize all charges imposed upon the borrower ... in connection with the settlement."  12 U.S.C. § 2603(a).

16.   RESPA requires that the lender and mortgage broker provide to the borrower "a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the settlement."  12 U.S.C. § 2604(c); 24 C.F.R. § 3500.7.

17.   The term "settlement services" includes "any service provided in connection with a real estate settlement including, but not limited to, ... the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans)."  12 U.S.C. § 2602(3); 24 C.F.R. § 3500.2.

## COMMON ALLEGATIONS

18.   On or about June 29, 2006 the Plaintiff purchased the Property and obtained two mortgage loans from Long Beach Mortgage totaling $625,000.00.  The first loan was in the amount of $500,000.00 and the second in the amount of $125, 000.00.  The mortgage loan was eventually transferred for servicing to Washington Mutual. Washington Mutual was recently acquired by Chase.

19. The loan transactions were negotiated by a mortgage broker, Bretlin Home Mortgage.

4

20. At all times material to this action, Defendant Long Beach made residential mortgage loans, including "federally related mortgage loans" as that phrase is defined by RESPA.

21. At all times material to this action, Defendant Bretlin Mortgage conducted business as a "mortgage broker" as that phrase is defined by Regulation X at 24 C.F.R. § 3500.2. As such, MFN provided real estate "settlement services" as that phrase is defined by RESPA at 12 U.S.C. § 2602(3) and at 24 C.F.R. § 3500.2.

22. Plaintiff entered into an agreement with Defendant Bretlin through its agents and employees. Pursuant to this agreement, Bretlin agreed to serve as his agent and to provide him with mortgage brokerage services in connection with his desire to obtain a loan. In fact, the represented to plaintiff that he and his company would assist him in obtaining a good mortgage loan at a low interest rate.

23. Pursuant to 12 U.S.C. §§ 2604 and 2607, Defendant Bretlin was obligated to disclose fully all costs, expenses, and fees from others, and not to accept any kickbacks from others, associated with the "federally related mortgage loan" and Bretlin's provision of brokerage services.

24. Plaintiff provided to Defendant Bretlin application information and paperwork necessary to secure a "federally related mortgage loan."

25. On or about June 14, 2006, Defendant Bretlin supplied a "Good Faith Estimate" to plaintiff.

26. A true and accurate copy of the "Good Faith Estimate is attached to this Complaint as Exhibit A, and by this reference is incorporated herein.

27. This "Good Faith Estimate" provides on line 813 as follows: "YPS 1.5% $7,500."

28. The Good Faith Estimate also indicates on line 803 " Appraisal Fee $400.00"

5

29.    The "Good Faith Estimate" discussed above also stated: "DELIVERY OF THE ABOVE GOOD FAITH ESTIMATE AND THE BOOKLET(S) ENTITLED, "SETTLEMENT COSTS AND YOU" AND "CONSUMER HANDBOOK ON ARMS", IF APPLICABLE IS HEREBY ACKNOWLEDGED."

30.    Although the Good Faith Estimate provided to plaintiff by Bretlin suggests that he received a "Settlement Costs" booklet, Defendants Long Beach and Bretlin failed to provide a "Settlement Costs" booklet to plaintiff.

31.    On or about June 29, 2006, Defendant Long Beach conducted a loan closing to consummate its residential mortgage loans to plaintiff, such loans being "federally related mortgage loans" as defined by RESPA at 12 U.S.C. § 2602(1) and at 24 C.F.R. § 3500.2.

32.    At the June 29, 2006 loan closing, Defendant Long Beach provided him with a $500,000.00, 30-year adjustable rate mortgage loan with a variable interest rate beginning with an annual percentage rate at 7.950% and a $125,000.00 30-year fixed rate loan with an interest rate of 11.3 %.

33.    At the June 29, 2006 loan closing, Defendant Long Beach presented plaintiff with a U.S. Department of Housing and Urban Development "Settlement Statement" (HUD-1) which disclosed that Defendant Bretlin would receive from Defendant Long Beach a fee which was referred to as a "PREMIUM YEILD ADJUSTMENT, POC $7500.00."

34.    The HUD-1 also indicates at line 803 Appraisal Fee to Advanced Appraisal, POC $8400.

35.    A true and accurate copy of the "Settlement Statement" is attached to this Amended Complaint as Exhibit B, and by this reference is incorporated herein.

36.  Defendant Long Beach in fact paid this fee as a kickback in connection with Bretlin's referral of plaintiff to Defendant Long Beach for the purpose of making a "federally related mortgage loan" to him.

37.  Defendant Long Beach's payment of this steering fee increased Plaintiff's settlement costs.  Defendant Long Beach arranged with Defendant Bretlin to charge plaintiff a higher interest rate than Defendant Long Beach had originally approved for him as a way of providing the funds to pay the kickback to MFN.

38.  Therefore, this fee for steering was paid indirectly by plaintiff through a higher interest rate than that for which he was otherwise qualified and than that for which Long Beach originally approved for her.

39.  The settlement statement shows Bretlin received a total of $8,500.00 or 1.36 points.

40.  Defendant Long Beach paid this fee or kickback pursuant to an agreement or understanding that business incident to or a part of a real estate "settlement service" involving a "federally related mortgage loan" would be referred by Defendant Bretlin to Defendant Long Beach.

41.  At all times relevant herein, plaintiff had no notice or knowledge that Defendant Long Beach paid this fee to Defendant Bretlin as a kickback for steering Plaintiff to Long Beach for a mortgage loan, or that this fee was paid indirectly by him through a higher interest rate and terms than he was otherwise qualified for and than Long Beach had otherwise approved for him.

42.  Neither Defendant Long Beach nor Defendant Bretlin disclosed to plaintiff that Long Beach's payment of this fee to Bretlin constituted a kickback or referral fee at or prior to the time that Bretlin made the referral to Long Beach in connection with Long Beach's making a "federally related mortgage loan" to plaintiff.

7

43.  Defendant Long Beach's payment of this fee or kickback to Bretlin did not compensate Bretlin for settlement services actually performed because plaintiff had himself paid Bretlin $1,000,00 as a broker's fee out of the proceeds of the loan.

44.  The $1,000.00 payment more than compensated Bretlin for settlement services.

## COUNT I AGAINST LONG BEACH MORTGAGE – RESPA VIOLATIONS

45.  Plaintiff incorporates by reference Paragraphs 1 through 44 of her Amended Complaint.

46.  Based on the foregoing facts, Long Beach violated RESPA with respect to Plaintiff by:

(a)  giving or paying fees, kickbacks or other things of value to Defendant Bretlin pursuant to an agreement or understanding that business incident to or a part of a real estate settlement service involving federally related mortgage loans would be referred by Defendant Bretlin to Defendant Long Beach, in violation of 12 U.S.C. § 2607(a) and 24 C.F.R. § 3500.14(b); and

(b)  giving or accepting a portion, split, or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of 12 U.S.C. § 2607(b) and 24 C.F.R. § 3500.14(c).

47.  Pursuant to 12 U.S.C. § 2607(d), Plaintiff is entitled to recover, and hereby seeks to collect, from Defendant Long Beach an amount equal to three times the amount of any and all

charges for "settlement services" paid directly or indirectly by plaintiff, as well as actual

damages, court costs, and any and all other amounts or damages allowed by RESPA.

## COUNT II BRETLIN HOME MORTGAGE – RESPA VIOLATIONS

48.   Plaintiff incorporates by reference Paragraphs 1 through 44 of his Complaint.

49.   Based on the foregoing facts, Defendant Bretlin violated RESPA with respect to

plaintiff by:

(a)   accepting fees, kickbacks or other things of value from Defendant Long Beach
pursuant to an agreement or understanding that business incident to or a part of a
real estate settlement service involving federally related mortgage loans would be
referred to Defendant Long Beach, in violation of 12 U.S.C. § 2607(1) and 24
C.F.R. § 3500.14(b); and

(b)   giving or accepting a portion, split, or percentage of charges made or received for
the rendering of a real estate settlement service in connection with a transaction
involving a federally related mortgage loan other than for services actually
performed, in violation of 12 U.S.C. § 2607(b) and 24 C.F.R. § 3500.14(c).

50.   Pursuant to 12 U.S.C. § 2607(d), plaintiff is entitled to recover, and hereby seeks to

collect, from Defendant Long Beach Mortgage an amount equal to three times the amount of any

and all charges for "settlement services" paid directly or indirectly by plaintiff, as well as actual

damages, court costs, and any and all other amounts or damages allowed by RESPA.

## COUNT III AGAINST LONG BEACH MORTGAGE – INTENTIONAL
## INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

51. Plaintiff incorporates by reference Paragraphs 1 through 44 of his Complaint.

52. Plaintiff entered into a contract with Bretlin whereby he would pay a fee to Bretlin in consideration for Bretlin acting as his agent in procuring a loan for him.

53. Long Beach knew plaintiff had contracted with Bretlin in conjunction with the loan transaction at issue.

54. Long Beach induced Bretlin to breach its agency contract with and its duty owed to plaintiff by offering and paying Bretlin an illicit payment to steer plaintiff to Long Beach for a loan at artificially inflated rates and terms.

55. Plaintiff was damaged by Long Beach's conduct, in that he unwittingly signed the loan at higher interest rate and points (prepaid finance charges) than were actually available to her from Long Beach.

56. Long Beach's conduct in intentionally interfering with plaintiff's contract with Bretlin was neither justified nor privileged.

57. As a result of Long Beach's intentional interference with plaintiff's contract with Bretlin, plaintiff is entitled to compensatory damages, measured by the difference between the amounts required to be paid to Long Beach and the amounts that would have been paid had plaintiff's actual approval rates and terms been offered to him, rather than the inflated rates and terms; litigation expenses and costs; and such other relief as the Court deems just and proper.

58. The actions of Long Beach in deliberately interfering with plaintiff's contract with Bretlin authorize the imposition of exemplary damages, in that they show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences.

10

## COUNT II AGAINST LONG BEACH MORTGAGE –
## RESTITUTION FOR MONEY HAD AND RECEIVED

59. Plaintiff incorporates by reference Paragraphs 1 through 44 of his Complaint.

60. Long Beach has been unjustly enriched and cannot in good conscience keep that portion of the monthly payments it collects from plaintiff which is attributable to the artificial, inflated component of plaintiff's loan contract. Long Beach must instead return to plaintiff the unlawful loan payments he has made thus far which are attributable to the inflated portion of his interest rate and points (prepaid finance charges), and the related revenue Long Beach has derived by virtue of his loan, along with interest thereon.

61. As a result of Long Beach's unjust enrichment, Long Beach is liable to Plaintiff for the return to Plaintiff of the unlawful loan payments he has made thus far which are attributable to the inflated portion of his interest rate and points (prepaid finance charges), and the related revenue Long Beach has derived by virtue of her loan, along with interest thereon.

## COUNT III AGAINST LONG BEACH – DAMAGES
## FOR FRAUD BY CONCEALMENT

62. Plaintiff incorporates by reference Paragraphs 1 through 44 of his Complaint.

11

63. Defendant Long Beach represented to plaintiff on Line 810 of the HUD-1 Settlement Statement as follows: "PREMIUM YEILD ADJUSTMENT TO BRETLIN MORTGAGE, POC $7,500.00"

64. Defendant Long Beach intentionally suppressed and concealed from plaintiff the fact that Long Beach was paying Bretlin to steer plaintiff to Long Beach for a mortgage loan.

65. Defendant Long Beach intentionally suppressed and concealed from plaintiff the fact that the money for this payment came from Long Beach's charging plaintiff a higher interest rate and points (prepaid finance charge) than he would have otherwise qualified for and than Long Beach had otherwise approved for Plaintiff.

66. Defendant Long Beach suppressed and concealed these facts for the purpose of obtaining an advantage or benefit over plaintiff.

67. Suppression or concealment of a material fact which a party is under an obligation to communicate constitutes fraud.

68. These facts were material to the loan transaction, and constituted material factors, terms, or conditions of a transaction to which a mortgage lender or broker was a party, pertinent to an applicant for a mortgage loan or mortgagor.

69. The obligation to communicate may arise from the particular circumstances of the case.

70. Defendant Long Beach had a duty not to conceal and suppress these material facts from plaintiff under the particular circumstances of this case as provided by MCL 445.1672.

71. Plaintiff could not have discovered these intentionally concealed facts by the exercise of ordinary care.

12

72.   Plaintiff was damaged by Long Beach's conduct, in that by executing the loan agreement, he unwittingly agreed to pay charges that were actually improper and illegal charges, at a higher interest rate and points (finance charges) than were actually available to him from Long Beach.

73.   As a result of Long Beach's suppression and concealment, plaintiff is entitled to compensatory damages, measured by the difference between the amounts required to be paid to Long Beach and the amounts that would have been paid had Ms. plaintiff's actual approval rates and terms been offered to her, rather than the inflated rates and terms; litigation expenses and costs; and such other relief as the Court deems just and proper.

74.   The actions of Long Beach in deliberately committing fraud by concealment authorize the imposition of exemplary damages, in that they show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences.

## COUNT IV

### (VIOLATION OF THE MORTGAGE BROKERS, LENDERS AND SERVICERS ACT)

75.   Plaintiff incorporates by reference Paragraphs 1 through 44 of his Complaint.

76.   The acts of Defendant as set forth herein violate the Mortgage Brokers, Lenders and Servicers Act, MCL 445.1672.

13

77.    As a direct result of Defendant's violation of the Michigan Brokers, Lenders and

Servicers  Act, the plaintiff has suffered consequential and compensatory

damages, including the loss of his real estate, damage to his credit rating, court

costs and attorney fees.

WHEREFORE plaintiff requests a judgment against defendants jointly and severally in the

amount of his actual damages, plus costs, interest and attorney fees.


HORACE D. COTTON (P-33268)
Attorney for Plaintiff
615 Griswold, Suite 1805
Detroit, MI 48226
(313) 965-7079

Dated: *October 28, 2009*

I declare that the statements contained above are true to the best of my knowledge,

information and belief.


Dated: *10/28/09*

Robert Shumake

Subscribed and sworn to before me
On this 28 day of October, 2009

Notary Public, Wayne County
My commission expires:

WILLIAM W. SMITH
Notary Public, State of Michigan
County of Oakland
My Commission Expires 02-22-2015
Acting in the County of Oakland

14